[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT DESIGNED LEARNED, INC.'S MOTION FOR SUMMARY JUDGMENT #120
The plaintiff Best Friends Pet Care, Inc. (Best Friends), operates a chain of pet care facilities. A facility that the plaintiff owned in Rocky Hill, Connecticut was being constructed when it was consumed by fire on January 12, 1998. The project was undertaken pursuant to a Construction Management Agreement (CMA) between Best Friends and the construction manager, Highland Management Associates, Inc. (Highland). The defendant Design Learned, Inc. (Design), was retained by Highland pursuant to an agreement between Design and Highland, whereby Design provided design consulting services for the Rocky Hill facility, which would be a prototype for the erection of similar facilities throughout the country.
Best Friends had its Rocky Hill property covered by an insurance policy issued by The Hartford Insurance Company (The Hartford), and recovered in excess of $1 million for damages resulting from the fire.
In this litigation, Best Friends has not brought a claim against its construction manager, Highland, but has brought claims against Design for negligence in their design work; against United Dominion Industries under a products liability theory for a defective burner unit product; and against American Standard's Trane Division for failing to properly advise the plaintiff on equipment for the facility.
Design has moved for summary judgment on the theory that the CMA (Construction Management Agreement) contains a valid "waiver of subrogation" clause that is applicable to Design and prevents Best Friends from pursuing this claim against Design. In opposition to the motion, Best Friends argues that the waiver of subrogation provision is void pursuant to General Statutes § 52-572k and that the CMA is not applicable to Design. The court finds the issues for Design and enters summary judgment in its favor.
"Practice Book § 17-49 provides that summary judgment shall be CT Page 9133 rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . (Citation omitted; internal quotation marks omitted.) DaCruzv. State Farm Fire Casualty Co., 69 Conn. App. 507, 511, ___ A.2d ___ (2002). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . ." (Citation omitted.) Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988)
In its opposition papers, Best Friends argues that the waiver of subrogation clause in the CMA is void pursuant to General Statutes §52-572k. There is no question that this case is brought as a subrogation claim by The Hartford seeking to recover its payments under its insurance contract with Best Friends. The CMA between Best Friends and Highland is an AIA (American Institute of Architects) form document which specifically provides in Article 10.4:
 Waivers of subrogation. The owner and construction manager waive all rights against each other and against the contractors, architect, consultants, agents and employees of any of them, for damages, but only to the extent covered by property insurance during construction. . . . The owner and construction manager each shall require similar waivers from their contractors, architect, consultants, agents and persons or entities awarded separate contracts administered under the owners own forces.
Connecticut General Statutes § 52-572k states as follows:
Hold harmless clause against public policy in certain construction contracts:
(a) Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relating to the construction, alteration, repair or maintenance of any building, CT Page 9134 structure or appurtenances thereto including moving, demolition, and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of the such promisee, such promisee's agents or employees, is against public policy and void, provided this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by a licensed insurer.
It is a basic principle of law that a subrogee obtains no greater rights against a party than its subrogor had. Orselet v. DeMatteo, 206 Conn. 542,546-47, 539 A.2d 95 (1988), Connecticut Savings Bank v. First NationalBank Trust Co., 138 Conn. 298, 305, 84 A.2d 267 (1951). The Hartford obtained no greater rights than Best Friends, which waived its subrogation rights pursuant to the CMA. Also see Maryland Casualty Co.v. Trane Co., 46 Conn. Sup. 172, 742 A.2d 444 (1999), where, in a similar scenario, a waiver of subrogation clause in a contract was applied to grant summary judgment against the insurer subrogee.
The answer to the policy claim under General Section § 52-572k is apparent in the law of other jurisdictions. There is no Connecticut case directly on point. The New Hampshire Supreme Court in Chadwick v. CSI,LTD., 629 A.2d 820, 825-26 (N.H. 1993), dealt with insurance provisions in a standard AIA contract and a public policy against exculpatory provisions in construction related contracts. The court held:
 The insurance provisions of the standard AIA contract are not designed to unilaterally relieve one party from the effects of its future negligence, thereby foreclosing another party's avenue of recovery. Instead, they work to insure that injuries or damage incurred during the construction project are covered by the appropriate types and limits of insurance, and that the costs of the coverage are appropriately allocated among the parties.
Id.
In Ralph Korte Construction Co. v. Springfield Mechanical Co.,369 N.E.2d 561 (1977), the Illinois Appellate Court did not apply an exculpatory statutory provision similar to General Statutes § 52-572k, against a subrogation waiver. The court reasoned that the policy prohibiting exculpatory clauses was based on the protection of workers and CT Page 9135 the public from a contractor lacking motivation to be careful. The court found that these concerns were not implicated by subrogation waivers based on insurance provisions which affect the rights of the contracting parties and not the public's interests. Also see Intergovernmental RiskManagement v. O'Donnell, Wicklund, Pigozzi Peterson Architects, Inc.,692 N.E.2d 739, 744 (Ill.App.Ct. 1998)
The Michigan Court of Appeals in Zurich Ins. Co. v. Midwest ManagementInc., 1996 Mich. App. Lexus 1768 at 7 (Michigan Court of Appeals, December 30, 1996), found that a similar waiver of subrogation clause was not an exculpatory clause, in that it mutually absolved parties from liability where insurance covers the loss. Also see ViacomInternational, Inc. v. Midtown Realty Co., N.Y.S.2d 326, 331 (N.Y.App.Div. 1983), in which the New York Appellate Court observed that the waiver of subrogation clause merely reflected the allocation of the risk of liability through the device of insurance.
The Vermont Supreme Court in Behr v. Hook, 787 A.2d 499, 503 (Vt. 2001), upheld the application of a subrogation waiver as the shifting of loss to the insurance company, regardless of which party is at fault thus avoiding the prospect of extended litigation which would interfere with construction.
The waiver of subrogation clause is not encompassed by the prohibition of exculpatory clauses contained in 52-572k.
Best Friends also argues that the CMA with Highland does not cover Design. The court finds, however, that Design as a consultant to Highland is specifically subject to the subrogation waiver provision of 10.4 of the CMA. The contract between Design and Highland required Design to provide prototype modification services for four of Best Friend's facilities, responsibilities clearly within the construction manager's obligations under the CMA.
Best Friends points out that the contract between Design and Highland should have similarly contained a waiver of subrogation provision, but its absence does not affect the validity of the waiver provision in the CMA between Best Friends and Highland. Design as a consultant was a third party beneficiary of the CMA subrogation waiver provision. The test and the validity of the third party beneficiary's claim is the intention of the parties to the contract, in this case, the parties to the CMA. SeeGazo v. Stamford, 255 Conn. 245, 765 A.2d 505 (2001)
Best Friend's claims against Design are subrogation claims which are prohibited by the agreement between Best Friend and its construction manager, Highland. CT Page 9136
The motion for summary judgment (#120) is granted.
 ______________________, J. Robert F. McWeeny